UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


B&G GULF COAST PROPERTIES, LLC                                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 1:10CV143-RHW

DEMO DIVA, L.L.C.                                                 DEFENDANT


### ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant Demo Diva, L.L.C.'s (Demo Diva) [71] Motion for Partial Summary Judgment.  Demo Diva requests a grant of summary judgment on Plaintiff B&G Gulf Coast Properties, LLC's (B&G) claims for misappropriation of trade secrets and unjust enrichment.


### Factual Background

Demo Diva is a limited liability company based in Louisiana who contracts with homeowners to demolish houses or slabs in areas affected by Hurricane Katrina.  On February 3, 2009, Demo Diva entered into a contractual arrangement with B&G, whereby B&G provided Demo Diva with customer leads identifying potential customers who might qualify for Demo Diva's services.  In return, Demo Diva would pay B&G for any leads that resulted in a property owner who signed a contract with Demo Diva and once Demo Diva performed the demolition work.  As part of the agreement, B&G also provided telemarketing services.  B&G would contact property owners to verify their eligibility for special National Flood Insurance Program funds and work with the property owners to obtain demolition contracts with Demo Diva.  Demo Diva and B&G entered into a revised service fee agreement on February 24, 2009.  They also entered into a "Proposal for Profit-Sharing" on March 26, 2009.

Under the terms of the contracts, B&G's services were non-exclusive to the extent that B&G provided leads to demolition companies other than Demo Diva.  However, B&G provided Demo Diva with unique leads, i.e. Demo Diva's leads were not shared with any other demolition companies.  Demo Diva accessed their leads through a password protected database maintained by B&G.  B&G did not share the process by which it gathered the leads, only the leads themselves.

On February 25, 2009, approximately three weeks after the parties first entered into their contractual arrangement, B&G emailed to Simone Bruni (Demo Diva's member and manager) a "Non-Circumvention, Non-Disclosure and Working Agreement" (NCND).  Bruni responded by email stating "[w]ill take a look."  There is no indication that the parties discussed the NCND any further.  By the terms of the NCND, Demo Diva would have been precluded from using the customer leads outside of the contractual arrangements already entered into by the parties.  It is undisputed that the parties did not execute the NCND.

In 2010, the parties began negotiating a new contractual arrangement, but the parties were unable to reach an agreement.  The parties were unable to agree on a payment method.  Demo Diva also alleges that there were disagreements about B&G's method of contacting leads on Demo Diva's behalf in B&G's capacity as telemarketer.  On February 3, 2010, Demo Diva canceled its agreement with B&G, stating that it would no longer purchase leads from B&G nor pay for any pending or future contracts derived from the leads B&G provided to Demo Diva.  Within two hours of the cancellation, Demo Diva sent emails to the B&G-provided leads to inform those property owners to contact Demo Diva directly.

B&G filed a complaint and second amended complaint alleging breach of contract,

2

breach of implied duty of good faith and fair dealing, unjust enrichment, fraudulent

misrepresentation, negligent misrepresentation, and misappropriation of trade secrets.  Demo

Diva filed the instant motion for partial summary judgment on the claims for misappropriation of

trade secrets and unjust enrichment.

      Demo Diva argues that the customer leads do not constitute a trade secret because B&G

failed to keep the data secret.  Moreover, Demo Diva asserts that the terms of the contracts

authorized Demo Diva to use the leads, without any non-use or non-disclosure provisions.  Demo

Diva acknowledges that B&G may have a protected interest in the methods by which it derived

the data but contends that once it purchased the leads from B&G, it obtained an ownership

interest, including the right to use the data as it pleased.

      B&G counters that it took reasonable measures to protect the leads as confidential and

that these actions create a question of fact as to whether the leads should be deemed a trade

secret.  B&G also disputes Demo Diva's characterization that it obtained an unrestricted property

interest in the leads.  Rather, B&G argues that Demo Diva only paid for a lead once the lead

resulted in a signed contract and demolition work.  Consequently, Demo Diva's use of the leads

without B&G's permission constituted misappropriation of a trade secret.

## Law and Analysis

### Standard of Review

      Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to

interrogatories and admissions on file, together with affidavits, if any, show that there is no

genuine dispute as to any material fact and that the moving party is entitled to judgment as a

matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where "the summary

judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment". *Id.* at 709. However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

In the service fee agreements dated February 3, 2009, and February 24, 2009, the parties expressly agreed that Louisiana law should govern their contractual arrangements. The profit sharing agreement dated March 26, 2009, is silent as to the choice of law. Contracting parties may decide which state's law will govern their agreement provided the state law selected bears a

reasonable relation to the transaction.  *See Herring Gas Co. v. Magee*, 22 F.3d 603, 607 (5th Cir.

1994); *PIC Group, Inc. v. LandCoast Insulation, Inc.*, 718 F.Supp.2d 795, 799-800 (S.D. Miss.

2010).  Demo Diva is a Louisiana limited liability company.  The first two contracts listed zip

codes in Louisiana as the source for customer leads.  Based on these factors, the Court finds that

Louisiana bears a reasonable relationship to the transaction at issue.  Both Mississippi and

Louisiana have enacted the Uniform Trade Secret Act, with virtually identical statutory language.

*See* La. R. S. 51:1431 *et seq.* and Miss. Code Ann. § 75-26-3 *et seq.*  The parties agree that there

is no material conflict between Louisiana and Mississippi law.

**Trade Secret**

      Demo Diva first argues that the leads are not a trade secret because B&G failed to keep

the information secret.  In support of this contention, Demo Diva points to the fact that B&G

provided the leads to Demo Diva, and did so in the absence of any non-use or non-disclosure

agreement.  Moreover, B&G voluntarily published the leads as an exhibit to its Court pleadings

and without doing so under seal.

      The relevant statutory language defines a "trade secret" as

> . . . information, including a formula, pattern, compilation,
> program, device, method, technique, or process that:
>
> (a) derives independent economic value, actual or potential, from
> not being generally known to and not being readily ascertainable by
> proper means by other persons who can obtain economic value
> from its disclosure or use, and
>
> (b) is the subject of efforts that are reasonable under the
> circumstances to maintain its secrecy.

La. R.S. 51:1431(4)(a-b) & Miss. Code Ann. § 75-26-3(d)(i-ii).  Demo Diva relies on the legal

premise that "[o]nce data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984).

For purposes of this motion, the Court concludes that B&G has satisfied subsection (a) of the statute, namely, that the customer leads are a compilation with independent economic value and not readily ascertainable by others.  In a footnote, Demo Diva expressly declined to address this issue in its motion for summary judgment but reserved the right to address the issue later. Hence, the summary-judgment analysis must focus on subsection (b) of the statute, *i.e.* whether the customer leads were "the subject of efforts that are reasonable under the circumstances to maintain its secrecy".  La. R.S. 51:1431(4)(b).  Thus, the Court considers whether B&G took reasonable efforts to maintain the secrecy of the customer leads.  *See Sheets v. Yamaha Motors, Corp., USA*, 849 F.2d 179, 183 (5th Cir. 1988); *Fred's Stores of Mississippi, Inc. v. M&H Drugs, Inc.*, 725 So. 2d 902, 911 (Miss. 1998).  In doing so, the Court also considers whether an "express *or implied* contractual or confidential relationship existed between the parties which obligated the party receiving the secret information not to use or disclose it."  *Pontchartrain Med. Labs, Inc. v. Roche Biomedical Labs, Inc.*, 677 So. 2d 1086, 1090 (La. App. 1st Cir. 1996)(emphasis added).

Although the contractual arrangement between the parties did not contain a non-use or non-disclosure agreement, the absence of such an agreement is not determinative of the issue. *See Marshall v. Gipson Steel, Inc.*, 806 So. 2d 266, 272 (Miss. 2002)(holding that a non-disclosure agreement is not a per se requirement for information to qualify as a "trade secret"). Demo Diva's argument focuses exclusively on the express terms of the parties' contracts.

However, the law does not require an express agreement of confidentiality or of non-use and non-disclosure.  It is sufficient for there to be an implied contractual or confidential relationship. *See Pontchatrain Med. Labs*, 677 So. 2d at 1090.

As evidence of its effort to maintain secrecy and as evidence of a confidential relationship, B&G points out that the leads provided to Demo Diva were unique to Demo Diva and not shared with the public or any other demolition companies.  Moreover, the leads were maintained by B&G on a password protected database.  The services provided by B&G with respect to contacting leads and attempting to secure demolition contracts expanded over the course of the business arrangement between the parties, thereby suggesting continued control over the information by B&G.  Although Demo Diva declined to sign a NCND agreement forwarded to them by B&G on February 25, 2009, the fact that B&G submitted the agreement may be interpreted as an intention on the part of B&G to maintain as confidential the lead data. Furthermore, the leads resemble customer lists, which have been characterized as trade secrets in some circumstances.  *See Tom James Co. v. Mark H. Hudgins*, 261 F.Supp.2d 636, 641 (S.D. Miss. 2003); *Pontchatrain Med. Labs*, 677 So. 2d at 1090.  The Court finds that there is a genuine issue of material fact as to whether an implied contractual or confidential relationship existed that obligated Demo Diva not to use or disclose the leads.  Likewise, a genuine issue of material fact exists as to whether B&G took reasonable efforts to maintain secrecy of the leads. As such, there exists a genuine issue of material fact as to whether the leads constitute a trade secret.  *See Johnson Controls, Inc. v. Guidry*, 724 F.Supp.2d 612, 629 (W.D. La. 2010); *Wyatt v. PO2, Inc.*, 651 So.2d 359, 363 (La. App. 2nd Cir. 1995).

The fact that B&G published the list of leads as an exhibit to its court filing does not alter

7

the Court's conclusion.  Demo Diva canceled the contract on February 3, 2010, and began using

the data as its own shortly thereafter.  B&G did not publish the leads as an exhibit to court

pleadings until March 4, 2010–nearly a month later.  B&G asserts that by this time, the trade

secrets disclosed to Demo Diva were worthless to B&G or any other contractor to whom B&G

could market the leads based on Demo Diva's misappropriation and use of the leads.  B&G has

not demonstrated conclusively that the leads were in fact worthless as of March 4, 2010.

However, evidence that Demo Diva damaged B&G's credibility with the subject property owners

could reasonably support such a conclusion.  *See e.g. Empiregas, Inc. of Kosciusko v. Bain*, 599

So. 2d 971, 976 (Miss. 1992)(recognizing a company's interest in protecting its customer base,

its good will, and its ability to succeed in a competitive marketplace in context of non-

competition agreement).  Hence, the Court finds that, at the very least, there is a genuine issue of

material fact as to whether the leads were worthless at the time of  B&G's publication of the leads

on March 4, 2010.

**<u>Misappropriation</u>**

Demo Diva also argues that it did not misappropriate the customer leads.  Rather, Demo

Diva argues that it purchased the leads for a price, obtained an ownership interest, and therefore

was free to use the data as it chose.  Again, Demo Diva focuses its attention on the contractual

language and the absence of a non-use, non-disclosure agreement.  B&G counters that Demo

Diva did not purchase leads from B&G.  Rather, Demo Diva paid for each lead after the

customer signed a contract for demolition work.

In its relevant portion, the statute defines "misappropriation" as "[d]isclosure or use of a

trade secret of another without express or implied consent by a person who: . . . [a]t the time of

the disclosure or use, knew or had reason to know that his knowledge of the trade secret was: . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use". La. R.S. 51:1431(2) & Miss. Code Ann. § 75-26-3(b).

The terms of the fee service agreements between B&G and Demo Diva indicate that Demo Diva did not purchase the leads outright. Rather, Demo Diva only paid B&G if a lead resulted in a contract and demolition services. In this sense, the leads did not represent a complete and final transfer of property rights from B&G to Demo Diva. The leads remained the property of B&G until certain conditions were met. The property interest acquired by Demo Diva was not the lead to do with as it pleased, but rather a right to any proceeds resulting from a contract with the customer.

Once it canceled the agreement with B&G, Demo Diva used leads for which it had not yet paid B&G because the conditions for payment had not yet been met. If the leads constitute a trade secret, then Demo Diva's use of the trade secret without payment and without the consent of B&G gives rise to a potential claim for misappropriation of the trade secret. The Court finds the ownership question to be somewhat ambiguous, but under the standards of summary judgment review, the Court must resolve such ambiguities in favor of the non-movant. Accordingly, the Court finds that there remains a genuine issue of material fact as to whether Demo Diva misappropriated trade secrets.

**Unjust Enrichment**

The Court also finds that Demo Diva's motion for summary judgment as it relates to the claim of unjust enrichment should be denied. Demo Diva raises two arguments. First, it argues that B&G failed to keep its customer leads secret; therefore, it cannot fall back on the equitable

theory of unjust enrichment.  Second, Demo Diva argues that the presence of a contract between the parties precludes the theory of unjust enrichment.

Whether B&G failed to keep its customer leads secret is related to the issue of whether the customer leads should be considered a trade secret.  As explained above, this issue remains unsettled.  Whether there is a viable claim for unjust enrichment also depends on the predicate question of whether there is an enforceable contract.  B&G alleges that there is an enforceable contract but pleads in the alternative for unjust enrichment.  Given the unresolved issues regarding trade secrets and contracts, the Court concludes that it is premature to pass judgment on B&G's claim of unjust enrichment.

IT IS THEREFORE ORDERED AND ADJUDGED that the [71] Motion for Partial Summary Judgment is DENIED.

SO ORDERED, this the 26th day of March, 2012.

s/ *Robert H. Walker*
UNITED STATES MAGISTRATE JUDGE